**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EDWENA LEITE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **SCHOOL DISTRICT OF PHILADELPHIA** | : | **NO. 22-306** |

### <u>MEMORANDUM OPINION</u>

**Savage, J.**                                                                                            **July 30, 2024**

Plaintiff Edwena Leite brings this employment discrimination action against her former employer, School District of Philadelphia ("SDP").  She alleges that SDP placed a disciplinary warning in her personnel file based on her pregnancy and race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII"), as amended by the Pregnancy Discrimination Act.  She claims that she was denied new employment based on the disciplinary record in her personnel file.

SDP moves for summary judgment.  It argues that Leite has not produced sufficient evidence to establish a *prima facie* case of pregnancy or race discrimination, and there is no evidence that SDP's legitimate nondiscriminatory reasons for disciplining Leite were pretextual.  It also insists Leite suffered no adverse employment action.

We conclude that Leite has failed to establish that she suffered an adverse employment action—an essential element of her causes of action.  Therefore, we shall grant summary judgment in favor of SDP.

### Background

Leite, an African American woman, was hired by SDP as a special education

teacher in 2000.[1]  She began working at Ellwood Elementary School in 2011.[2]

Ellwood belonged to Learning Network 7 ("LN 7"), which has a special education team to oversee compliance at each member school.[3]  In addition to her regular duties as a Learning Support special education teacher, Leite served as a Special Education Liaison ("SEL") from September 2012 until September 2019.[4]

During the summer of 2019, the LN 7 special education team conducted an audit and found eleven noncompliant special education files under Leite's responsibility as SEL.[5]  As a result, Leite received a one-day suspension and a written warning on December 5, 2019.[6]  The documents relating to the 2019 disciplinary action were placed in her personnel file.[7]  The principal at Ellwood, Zaida Alfaro, testified that several other teachers received discipline as a result of the summer 2019 audit, including herself, a Hispanic woman; Jeanette Collazo, a Hispanic woman; and Marcia Sparagna, a white woman.[8]

---

[1] Def. the School District of Philadelphia's Stmt of Facts ¶¶ 1–2, ECF No. 38-2 ["SDP's Stmt of Facts"]; Pl.'s Resp. to Def.'s Stmt of Undisputed Material Facts ¶¶ 1–2, ECF No. 39-2 ["Pl.'s Stmt of Facts"].

[2] SDP's Stmt of Facts ¶ 5; Pl.'s Stmt of Facts ¶ 5.

[3] SDP's Stmt of Facts ¶¶ 10, 18–19; Pl.'s Stmt of Facts ¶¶ 10, 18–19.

[4] SDP's Stmt of Facts ¶ 13; Pl.'s Stmt of Facts ¶ 13.

[5] Leite's Personnel File, at D000004 (attached as Ex. 29 to Def., The School District of Philadelphia's, Reply to Pl.'s Opp'n to Summ. J., ECF No. 40 ["SDP's Reply"]), ECF No. 40-2 ["Personnel File"].  Only two of the eleven noncompliant files were in Leite's personal caseload.  *Id.*  The remaining nine noncompliant files were for students of other special education teachers at Ellwood.  *Id.*  As SEL, she was "ultimately responsible" for all the files at Ellwood.  *Id.*

[6] *Id.* at D000004–05.

[7] *Id.*  This disciplinary action is not at issue in this case.  All allegations of conduct occurring before December 29, 2020, are time barred.  *See infra*, at 9.

[8] Dep. of Zaida Alfaro 21:12–22, 29:21–32:20 (attached as Ex. 3 to SDP's Stmt of Facts), ECF No. 38-6 ["Alfaro Dep."].

Leite stepped down from the SEL position in September 2019.[9]   She never reapplied.[10]

Leite became pregnant in March of 2020.[11]   She claims she told Principal Alfaro of her pregnancy on May 7, 2020.[12]   Alfaro remembers first learning that Leite was pregnant from another staff member in mid-June 2020.[13]   Leite claims that a year prior in June 2019, she had informed Alfaro she was getting married and planned to have a baby.[14] Leite testified that she had previously been friendly with Alfaro, but that her relationship went downhill after telling her of her pregnancy plans.[15]

Leite requested a sabbatical leave for a full-school year period from August 16, 2020 through June 15, 2021.[16]   Her request was approved on May 22, 2020.[17]   A week later, she informed Alfaro of her sabbatical, explaining that she wanted to focus on her doctoral studies.[18]

---

[9] SDP's Stmt of Facts ¶ 20; Pl.'s Stmt of Facts ¶ 20.

[10] SDP's Stmt of Facts ¶ 21; Pl.'s Stmt of Facts ¶ 21.

[11] Dep. of Edwena Leite 21:17 (attached as Ex. 1 to SDP's Stmt of Facts), ECF No. 38-4 ["Leite Dep."].

[12] Pl.'s Stmt of Facts ¶¶ 23, 108; Leite Dep. 64:21-23.

[13] SDP's Stmt of Facts ¶ 23.

[14] Pl.'s Stmt of Facts ¶ 109; Leite Dep. 15:14-16:10.

[15] Pl.'s Stmt of Facts ¶ 110; Leite Dep. 86:16-87:2.

[16] SDP's Stmt of Facts ¶¶ 25, 28; Pl.'s Stmt of Facts ¶¶ 25, 28.

[17] SDP's Stmt of Facts ¶ 26; Pl.'s Stmt of Facts ¶ 26; Leite Sabbatical Approval (attached as Ex. 7 to SDP's Stmt of Facts), ECF No. 38-10.

[18] SDP's Stmt of Facts ¶ 27; Pl.'s Stmt of Facts ¶ 27; May 29, 2020 Email (attached as Ex. 8 to SDP's Stmt of Facts), ECF No. 38-11.

On June 5, 2020, Alfaro issued an "Investigatory Conference Notice," notifying Leite that an investigatory conference had been scheduled to discuss her alleged failure to fulfill her duties.[19]  The disciplinary proceedings arose out of an audit conducted by the LN 7 audit team in February 2020.[20]

Following the conference on June 9, 2020, Alfaro issued an Unsatisfactory Incident Report ("SEH-204 Report") summarizing the audit, the investigatory conference, and her findings.[21]   According to the SEH-204 Report, Leite, as the SEL during the 2018-2019 school year, was responsible for finalizing confidential files for students leaving Ellwood and transferring the files to the receiving schools.[22]  The February 2020 audit revealed that eighteen transfer student files which should have been sent to the students' new

---

[19] June 5, 2020 Investigatory Conference Notice (attached as Ex. 15 to SDP's Stmt of Facts), ECF No. 38-18 ["Investigatory Conference Notice"].  SDP provides a chart which summarizes their disciplinary process as follows.  *See* PFT Investigation Flowchart (attached as Ex. 16 to SDP's Stmt of Facts), ECF No. 38-19.

When SDP receives allegations of misconduct, it conducts a preliminary investigation.  The employee receives an Investigatory Conference Notice and is given an opportunity to respond to the allegations at an Investigatory Conference.  Following the Investigatory Conference, SDP either concludes that the allegations are unfounded or issues an SEH-204 form to summarize its disciplinary findings and recommendations.  The next step is a SEH-204 Conference.  After the SEH-204 Conference, SDP issues a Conference Summary detailing its updated disciplinary findings and recommendations.

If the Conference Summary recommends suspension or dismissal, the employee may request a Second Level Hearing before a hearing officer.  *See id.*  Following the Second Level Hearing, the hearing officer issues a Second Level Summary, which finalizes the disciplinary action.  Dep. of Sheila Wallin 29:22-24 (attached as Ex. 18 to SDP's Stmt of Facts), ECF No. 38-21 ["Wallin Dep."].

[20] SDP's Stmt of Facts ¶ 50; Pl.'s Stmt of Facts ¶¶ 50, 112.  There is no explanation as to why SDP initiated discipline in June 2020, four months after the audit was conducted.  The record suggests the delay may have resulted from the pandemic.  Alfaro testified that she learned of the results of the February 2020 audit around the same time Ellwood closed for COVID-19.  Alfaro Dep. 40:21–41:3, 44:25–45:25.

[21] June 2020 SEH-204 Unsatisfactory Incident Summary (attached as Ex. 17 to SDP's Stmt of Facts), ECF No. 38-20 ["June 2020 SEH-204"].

[22] *Id.*  at D000799.

schools were still in Leite's office.[23]  The February 2020 audit also found that Leite's IEPs were insufficiently supported with data and evidence, and that gaps in academic progress indicated she was providing "questionable levels of service" for several students.[24]

During the conference, Leite's union representative presented several defenses on her behalf.  She argued that Leite was not responsible for transferring files because she had stepped down as SEL several months before the audit and blamed district-wide staffing shortages for alleged deficiencies in special education services.[25]

After the conference, Alfaro concluded that Leite had failed to instruct students according to the required level of Special Education, failed to supply special education records with sufficient data, and failed to properly manage confidential files.[26]  Alfaro recommended a three-day suspension and a written warning, and that the SEH-204 be placed in Leite's personnel file.[27]

Leite's disciplinary proceedings were put on hold during the 2020-2021 school year while she was on sabbatical.[28]  She went on extended sick leave from August 23, 2021 through June 15, 2022.[29]  Leite's disciplinary proceedings were continued again during the 2021-2022 school year because she was on sick leave.[30]

---

[23] *Id.*

[24] Investigatory Conference Notice; *see also* June 2020 SEH-204.

[25] June 2020 SEH-204, at D000800–03.

[26] *Id.* at D000803–04.

[27] *Id.* at D000804.

[28] SDP's Stmt of Facts ¶ 60; Pl.'s Stmt of Facts ¶ 60.

[29] SDP's Stmt of Facts ¶ 29; Pl.'s Stmt of Facts ¶ 29.

[30] SDP's Stmt of Facts ¶ 62; Pl.'s Stmt of Facts ¶ 62.

On August 5, 2022, SDP's physician cleared Leite to return to full-time work for the 2022-2023 school year.[31]   She did not return to Ellwood.   At her request, she was transferred to Northeast Community Propel Academy.[32]   She started working there on August 23, 2022.[33]   Leite claims she requested the transfer because she did not want to work with Alfaro.[34]

On January 9, 2023, disciplinary proceedings resumed with an SEH-204 conference.[35]   Following the conference, Alfaro issued a Conference Summary Report, revising her initial disciplinary recommendation from a three-day suspension without pay to a one-day suspension without pay.[36]   Alfaro testified that she does not have any final decision-making power regarding any disciplinary actions against Leite.[37]   Sheila Wallin, the Hearing Officer, confirmed that Alfaro's recommendation was not final.  She explained that suspension recommendations must proceed to a Second Level Hearing before any action is taken.[38]

On July 8, 2023, Hearing Officer Wallin conducted a Second Level Hearing, the final step of SDP's disciplinary process.   On July 12, 2023, Wallin issued a Summary

---

[31] Aug. 5, 2022 Email (attached as Ex. 9 to SDP's Stmt of Facts), ECF No. 38-12; SDP's Stmt of Facts ¶ 30; Pl.'s Stmt of Facts ¶ 30.

[32] SDP's Stmt of Facts ¶ 32; Pl.'s Stmt of Facts ¶ 32.

[33] SDP's Stmt of Facts ¶ 33; Pl.'s Stmt of Facts ¶ 33.

[34] Pl.'s Stmt of Facts ¶ 32.

[35] January 10, 2023 SEH 204 Conference Summary (attached as Ex. 22 to SDP's Stmt of Facts), ECF No. 38-25.

[36] *Id*.

[37] Alfaro Dep. 64:4-10.

[38] Wallin Dep. 28:25-30:3; *see also* SDP's Stmt of Facts ¶¶ 55–56; Pl.'s Stmt of Facts ¶¶ 55–56.

Report with final disciplinary recommendations.  Wallin upheld Alfaro's finding that Leite had failed to fulfill her special education duties.[39]  Wallin eliminated the paid suspension.[40] She recommended that Leite be given a written warning and that the Summary Report and all related documents be added to her personnel file.[41]

As mandated by the CBA, written warnings placed in an employee's file must remain there for eighteen months and letters of suspension for five years.[42]  After those times, the employee can apply to have the documents removed.[43]

The parties dispute whether the disciplinary documents were ever placed in Leite's file.  SDP claims it was not.  SDP produced Leite's personnel file on September 6, 2023.[44] It did not include documents regarding the 2020 disciplinary action.[45]  In his declarations, Matthew Rambo, SDP's Manager of Employee Records, attested that Leite's personnel file did not include any disciplinary documents dating from 2020, and his office never received a request to remove documents from her personnel file.[46]  Leite maintains that

---

[39] July 12, 2023 Second Level Hearing Summary, at D000808 (attached as Ex. 23 to SDP's Stmt of Facts), ECF No. 38-26 ["Final Summary"].

[40] *Id.*  at D000809.  Wallin testified that the purpose for disciplinary action in SDP is not punitive but to correct issues.  Wallin Dep. 24:11–19.  Leite was not having any performance issues at her new school, and was no longer doing the additional SEL duties.  *Id.*  at 24:1–10.  Therefore, Wallin explained, a suspension was no longer warranted at the time of the Second Level Hearing.

[41] Final Summary, at D000809.

[42] Collective Bargaining Agreement, at 48–49 (attached as Ex. 2 to SDP's Stmt of Facts), ECF No. 38-5 ["CBA"].

[43] *Id*.

[44] *See* Personnel File.

[45] *See id*.

[46] Decl. of Matthew Rambo ¶¶ 6–7 (attached as Ex. 27. To SDP's Stmt of Facts), ECF No. 38-30 ["Rambo Decl."]; Second Decl. of Matthew Rambo ¶¶ 2–5 (attached as Ex. 30 to SDP's Reply), ECF No. 40-3 ["Suppl. Rambo Decl."].

the disciplinary documents had to be in her personnel file because Wallin recommended that they be included.[47]

On October 11, 2023, Leite resigned from SDP, effective October 20, 2023.[48]  Her resignation letter stated she was diagnosed with PTSD as a result of continued harassment from members of the SDP and Ellwood.[49]  She started working as Director of Special Education at Northwood Academy Charter School on October 24, 2023.[50]

Leite initiated this action on January 24, 2022, before the disciplinary proceedings concluded and before she resigned from SDP.[51]  Her original and Amended Complaint asserted pregnancy and race discrimination claims, and a claim of retaliation under Title VII.[52]  Judge Schiller granted SDP's motion to dismiss the Amended Complaint, finding that Leite failed to plead an adverse employment action and granting her leave to amend.[53]

Leite filed a Second Amended Complaint on November 11, 2022.[54]  The Second Amended Complaint added an allegation that the SEH-204 recommending a written

---

[47] Pl.'s Stmt of Facts ¶ 83.

[48] SDP's Stmt of Facts ¶ 35; Pl.'s Stmt of Facts ¶ 35.

[49] Pl.'s Stmt of Facts ¶ 35; Resignation Letter (attached as Ex. 11 to SDP's Stmt of Facts), ECF No. 38-14.

[50] SDP's Stmt of Facts ¶¶ 40–41; Pl.'s Stmt of Facts ¶¶ 40–41.

[51] Compl., ECF No. 1.

[52] *Id.*; Am. Compl., ECF No. 7.

[53] October 20, 2022 Mem., ECF No. 12.

[54] Second Am. Compl., ECF No. 14.

warning and suspension constitutes an adverse employment action.[55]  Leite alleges that the SEH-204 was placed in her personnel file and "barred [her] from securing other employment or advancing her career."[56]

SDP moved to dismiss the Second Amended Complaint, arguing that Leite failed to plead plausible discrimination and retaliation claims and that she relies largely on time-barred allegations.[57]  Judge Schiller dismissed Leite's retaliation claim for failure to plead that she had engaged in protected activity, but permitted her pregnancy and race discrimination claims to proceed.[58]  Judge Schiller also found that allegations of discriminatory conduct occurring before December 29, 2020 were time barred.[59]

SDP moves for summary judgment.  It argues that Leite has not established a *prima facie* case of race or pregnancy discrimination.  It contends that Leite did not suffer an adverse employment action, SDP had no knowledge of her pregnancy, and there is insufficient evidence to raise an inference of discrimination based on pregnancy or race. SDP further argues that even if Leite could state a *prima facie* case of discrimination, she cannot demonstrate SDP's performance-based reasons for taking disciplinary action were pretextual.

---

[55] *Id.* ¶¶ 39–45, 60, 71, 79.

[56] *Id.* ¶ 52.

[57] *See* Br. in Supp. of Def.'s Mot. to Dismiss Pl.'s Second Amended Compl., ECF No. 15.

[58] Feb. 27, 2023 Order, ECF No. 19.

[59] *Id.*

## Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Gillispie v. RegionalCare Hosp. Partners Inc.,* 892 F.3d 585, 592 (3d Cir. 2018) (citations omitted).

In examining a motion for summary judgment, we must view the facts in the light most favorable to the nonmovant and draw all reasonable inferences in her favor.  *Peroza-Benitez v. Smith,* 994 F.3d 157, 164 (3d Cir. 2021) (citing *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015)).  Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment.  *Revock v. Cowpet Bay W. Condo. Ass'n,* 853 F.3d 96, 112 (3d Cir. 2017) (citing *Windsor Sec., Inc. v. Hartford Life Ins. Co.*, 986 F.2d 655, 659 (3d Cir. 1993)).  Credibility determinations, the drawing of legitimate inferences from facts, and the weighing of evidence are matters left to the jury.  *In re Asbestos Prod. Liab. Litig. (No. VI),* 822 F.3d 125, 135–36 (3d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment.  *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

The party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact.  Fed. R. Civ. P. 56(c)  Once the movant

has done so, the opposing party cannot rest on the pleadings.  To defeat summary judgment, he must come forward with probative evidence establishing the *prima facie* elements of his claim.  *Celotex*, 477 U.S at 323–24.  The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which he bears the burden of production.  *Anderson*, 477 U.S. at 252.  An inference based upon speculation or conjecture does not create a material fact.  *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n. 12 (3d Cir. 1990).

**Analysis**

Title VII, as amended by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), makes it unlawful for an employer to discriminate against a pregnant employee in taking an employment action.  *Doe v. C.A.R.S. Prot. Plus, Inc.,* 527 F.3d 358, 363 (3d Cir. 2008). Title VII also makes it unlawful for an employer to discriminate against an employee based on race.  42 U.S.C. § 2000e-2(a).

Leite claims that SDP took disciplinary action against her because of her pregnancy and race.  She contends that SDP's stated reasons for the discipline were pretext for discrimination.

Because Leite is proceeding under a pretext theory and does not present any "direct evidence" of discrimination, her claims are governed by the burden-shifting *McDonnell Douglas* analysis.  *Qin v. Vertex, Inc.,* 100 F.4th 458, 472–73 (3d Cir. 2024); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Under the burden-shifting *McDonnell Douglas* analysis, Leite must first establish a *prima facie* case of discrimination.  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016). Establishing a *prima facie* case of discrimination "'is not onerous' and poses 'a burden

11

easily met.'"  *C.A.R.S. Prot. Plus*, 527 F.3d at 365 (quoting *Tex. Dep't of Corr. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

If the plaintiff fails to establish a *prima facie* case, the defendant is entitled to judgment as a matter of law.  The determination of whether a *prima facie* case has been established is, under most circumstances, a question of law for the court.  *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007) (citing *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797-98 (3d Cir. 2003) (per curiam)).

If she succeeds in establishing a *prima facie* case, the burden shifts to the defendant "to articulate a legitimate, non-discriminatory reason for the adverse employment action."  *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).  If the defendant satisfies its burden, the plaintiff must produce evidence from which a reasonable factfinder could conclude that the proffered reason for taking the adverse action was merely a pretext for intentional discrimination. *Id*. The final burden of production "merges with the ultimate burden of persuading [the jury] that she has been the victim of intentional discrimination."  *Burdine*, 450 U.S. at 256.

To make out a *prima facie* case of race discrimination under Title VII, Leite must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) nonmembers of the protected class were treated more favorably under circumstances giving rise to an inference of unlawful discrimination.  *Qin*, 100 F.4th at 473; *Jones v. Sch. Dist. of Philadelphia,* 198 F.3d 403, 410 (3d Cir. 1999)

To establish a *prima facie* case for pregnancy discrimination, Leite must show that: (1) she was pregnant; (2) the employer knew it; (3) she was qualified for her job; (4) she

suffered an adverse employment action; and (5) there is a nexus between her pregnancy and the adverse employment action.  *C.A.R.S. Prot.*, 527 F.3d at 365.

SDP argues that Leite has not established a *prima facie* case of pregnancy or race discrimination because she has not suffered any adverse employment action.   It maintains that there is no evidence the July 12, 2023 warning or related documents were placed in her personnel file.[60]  Therefore, SDP argues, the written warning could not have interfered with Leite's ability to obtain new employment and did not cause harm.[61]

Leite contends there is a genuine dispute of material fact as to whether the disciplinary action initiated in 2020 was documented in her personnel file.[62]  Leite testified that she never reviewed her personnel file.[63]   Nonetheless, she maintains that the disciplinary documents had to be in her personnel file because Wallin recommended that they be included.[64]  In an attempt to overcome the fact that the personnel file produced in discovery did not include the disciplinary documents, Leite speculates that SDP placed the documents in her file and removed them at some point during litigation.[65]  She offers no proof of this speculative statement.  Nor has she produced any evidence that she was rejected for a job or that her employment was affected because the documents were in her file.

---

[60] Def. the School District of Philadelphia's Mem. of L. in Supp. of its Mot. for Summ. J. 7–8, ECF No. 38 ["SDP's Br."]; SDP's Reply 1–4.

[61] SDP's Br 8; SDP's Reply 1–4.

[62] Mem. of L. in Supp. of Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 8–9, ECF No. 39 ["Pl.'s Opp'n"].

[63] Leite Dep. 46:13-16.

[64] Pl.'s Stmt of Facts ¶ 83.

[65] Pl.'s Opp'n 8.

Leite claims she started looking for new jobs both within and outside SDP in August of 2021.[66]  She identified nine positions for which she applied, six of which were outside SDP.[67]  She baldly claims that she did not get any of these positions because of the disciplinary record in her file.[68]  Yet, there is no evidence that any other school district accessed her personnel file or were aware of her disciplinary record.[69]

Recently, the Supreme Court lowered the bar for establishing an adverse employment action.  Previously, the Third Circuit defined an "adverse employment action" as one "that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment."  *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)).

In *Muldrow v. City of St. Louis,* 601 U.S.—, 144 S. Ct. 967 (2024), the Supreme Court held that an employee need not demonstrate that an employment-related harm was significant, serious, substantial, "or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar."  144 S. Ct. at 974.  The Court explained that to discriminate under Title VII means to treat one employee "worse" than another based on a protected characteristic.  *Id.*  Therefore, an employee need only show "some"

---

[66] SDP's Stmt of Facts ¶ 99; Pl.'s Stmt of Facts ¶ 99.

[67] Leite's Answer to SDP's Interrog. No. 15 (attached as Ex. 8 to SDP's Stmt of Facts), ECF No. 38-31; SDP's Stmt of Facts ¶¶ 102–03; Pl.'s Stmt of Facts ¶¶ 102–03.

[68] SDP's Stmt of Facts ¶ 100; Pl.'s Stmt of Facts ¶ 100; Second Am. Compl. ¶¶ 50, 52; Leite Dep. 53:20–54:8, 56:1-57:9.

[69] SDP's Stmt of Facts ¶ 104; Pl.'s Stmt of Facts ¶ 104; Leite Dep. 54:9-16.

harm to establish an adverse employment action.  *Id.* at 969; *Peifer v. Board of Probation and Parole*, 106 F.4th 270, 277 (3d Cir. 2024).

Although *Muldrow* lowered an employee's burden of proof with respect to adverse employment actions, it did not eliminate the injury requirement.  An employee must still demonstrate an "injury respecting her employment terms or conditions" to establish an adverse employment action.  *Muldrow*, 144 S. Ct. at 969, 977; *Peifer*, 106 F.4th at 277.

Leite alleges that the disciplinary documents were in her personnel file, inhibiting her ability to secure new employment.  If proven, Leite's allegation that the written warning was placed in her file and interfered with employment opportunities would constitute an adverse employment action.

In order to defeat summary judgment, Leite must "designate specific facts showing that there is a genuine issue" as to whether the disciplinary documents were placed in her file and accessible to potential employers.  *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (emphasis omitted).  Leite has not identified any facts showing that the disciplinary documents were placed in her personnel file and were seen by others, including SDP personnel and prospective employers.  On the contrary, the record demonstrates that they were not.

In its answer, SDP avers that the documents were not in Leite's personnel file because no final determination had been made regarding the June 2020 discipline.[70]  On September 6, 2023, after the disciplinary action was finalized, SDP produced Leite's personnel file in discovery.  The file did not include any documents related to the June 2020 discipline.

---

[70] Def.'s Answer to Pl.'s Second Am. Compl. ¶ 52, ECF No. 21.

According to the CBA and Matthew Rambo, an employee's file is accessible only to a limited number of SDP personnel.[71]  Rambo declared that he reviewed Leite's personnel file on January 18, 2024, and that there were no disciplinary documents dating from 2020.  He explained that his office is responsible for removing documents from personnel files, and he was never asked to remove any disciplinary documents from Leite's personnel file.

Leite confirmed she has no personal knowledge that disciplinary documents were placed in her file.  She never exercised her right to review her file.  She cites no facts to support her speculation that SDP removed the documents while in litigation.

That Sheila Wallin recommended the documents be placed in Leite's file does not prove they were.  Wallin's recommendation does not contradict the evidence that the documents were never placed in the file.

In short, Leite has not identified facts showing that the written warning was placed in her file and interfered with her ability to secure new employment.  The written warning is the only adverse employment action she alleges.[72]  She has not demonstrated that the written warning was an adverse employment action.  Leite has failed to produce facts from which a reasonable jury could find she suffered an adverse employment action—an essential element of a *prima facie* case of pregnancy and race discrimination under Title VII.  Therefore, SDP is entitled to summary judgment.

---

[71] Rambo Decl. ¶ 3; CBA, at 48.

[72] Second Am. Compl. ¶¶ 60, 71.